UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------------X
THE PHOENIX INSURANCE COMPANY,

                                      Plaintiff,

              -against-

THE CONTINENTAL INSURANCE COMPANY,

                                     Defendant.

-------------------------------------------------------------------X

Civil Action No.:

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, THE PHOENIX INSURANCE COMPANY ("Travelers"), by its attorneys, Usery & Associates, as and for its Complaint for Declaratory Judgment against Defendant, CONTINENTAL INSURANCE COMPANY ("CNA"), alleges upon information and belief as follows:

## NATURE OF THE ACTION

1. This is an insurance coverage action brought for declaratory relief for defense and indemnification arising out of an insurance policy that CNA issued to BCI, Inc. DBA Butler Company ("BCI") as a named insured thereunder.

2. In this action, Travelers seeks a declaration that CNA is obligated to defend and to indemnify The Associated Construction Company ("ACC") in connection with two separate lawsuits for property damage following a rainstorm on July 3, 2023, in Rocky Hill, Connecticut. One lawsuit was filed by Cedar Hollow Association ("Cedar Hollow"), and the other lawsuit was filed on behalf of seven (7) individual unit owners of Cedar Hollow (Cedar Hollow and the seven (7) individual unit owns shall collectively be referred to as, "the Claimants") against ACC and

others, in connection with a construction project involving a mixed-use development located at 2418 Main Street, Rocky Hill, Connecticut in which BCI was ACC's subcontractor for the project.

3.  The lawsuits, entitled, *Cedar Hollow Association, Inc. v. Rocky Hill Gateway, LLC, et al.*, Docket No. HHB-CV-24-6089325-S, and *Sandra Baker, et al v. Rocky Hill Gateway, LLC, et al.*, Docket No. HHB-CV-25-6097931-S, are currently pending in Connecticut Superior Court for the Judicial District of New Britain (collectively, the "Underlying Lawsuits"). Travelers also seeks a declaration that CNA is obligated to reimburse Travelers for defense costs paid by Travelers to date in the defense of the claims asserted against ACC in the Underlying Actions.

## PARTIES

4.  At all times relevant hereto, Travelers was and is a Connecticut corporation duly licensed and authorized to write insurance and conduct business in the Commonwealth of Massachusetts with a principal place of business in Hartford, Connecticut.

5.  Upon information and belief, at all times relevant hereto, CNA was and is an Illinois corporation duly licensed with a principal place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction due to diversity of citizenship and amounts in controversy in excess of $75,000, exclusive of interests and costs, pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201.

7.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claims occurred here.

8.  An actual justiciable controversy exists between the parties as to the coverage afforded under an insurance policy issued by Defendant CNA.

9.  The Plaintiff, Travelers has no adequate remedy at law.

2

## THE INSURANCE POLICIES

10. Travelers issued to ACC a policy of Commercial General Liability ("CGL") insurance (policy number DT-CO-3R286997-PHX-22) with effective dates of 09/30/22 to 09/30/23 (the "Travelers Policy").

11. Subject to certain terms, the Travelers Policy generally provides, among other things, coverage for property damage that takes place during the policy period and is caused by an occurrence.

12. Travelers has been providing ACC with coverage and defense under the Travelers Policy pursuant to its terms, conditions, and exclusions in connection with the Underlying Actions.

13. The Travelers Policy contains excess "other insurance" clauses that provide that coverage under the Travelers Policy is excess over any other coverage available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance.

14. Upon information and belief, Defendant CNA issued to BCI a policy of CGL insurance (policy number CNA74705XX) (the "CNA Policy").

15. Upon information and belief, the CNA Policy generally provides, among other things, coverage for property damage that takes place during the policy period and is caused by an occurrence.

16. Upon information and belief, the CNA Policy includes an endorsement entitled, "Blanket Additional Insured – Owners, Lessees, or Contractors – with Products-Completed Operations Coverage Endorsement, which states in pertinent part:

> I. WHO IS AN INSURED is amended to include as an Insured any person or organization whom you are required by written contract to add as an additional insured on this coverage part, but only with respect to liability for bodily injury, property damage, or personal and advertising injury caused in whole or in part

    by your acts or omissions, or the acts or omissions of those acting on your behalf:

    A. In the performance of your ongoing operations subject to such written contract; or

    B. In the performance of your work subject to such written contract, but only with respect to bodily injury or property damage included in the products-completed operations hazard, and only if:

      1. The written contract requires you to provide the additional insured such coverage; and

      2. This coverage part provides such coverage

  V. Under COMMERCIAL GENERAL LIABILITY CONDITIONS, the Condition entitled Other Insurance is amended to add the following, which supersedes any provision to the contrary in this Condition or elsewhere in this coverage part:

Primary and Non-Contributory

With respect to other insurance available to the additional insured under which the additional insured is a named insured, this insurance is primary to and will not seek contribution from such other insurance, provided that a written contract requires the insurance provided by this policy to be:

1. Primary and non-contributing with other insurance available to the additional insured; or
2. Primary and to not seek contribution from any other insurance available to the additional insured.

But except as specified above, this insurance will be excess or all other insurance available to the additional insured.

## RELEVANT FACTUAL BACKGROUND

17. Rocky Hill Gateway LLC ("Gateway") hired ACC as a construction manager for a construction project located at 2418 Main Street in Rocky Hill, Connecticut ("the premises").

18. Gateway and Belfonti Companies, LLC ("Belfonti"), the property developer, were in the process of developing a mixed-use development on the premises to consist of up to 213 luxury apartments in approximately eleven (11) buildings and 21,000 square feet of retail and/or office space.

4

19. The premises is adjacent to Cedar Hollow, a unit owner's association consisting of approximately 80 townhouse style units in 6 buildings.

20. The premises had a vast stormwater collection system, which consisted of approximately eighteen (18) catch basins and a network of drainpipes that tied into the trunkline, the primary method of water discharge from the premises. Prior to the project, there was a large, vacant commercial building on the premises.

21. ACC subcontracted with BCI for the construction, maintenance, and implementation of the drainage system for the premises.

22. The April 23, 2023, subcontract between ACC and BCI ("the Subcontract") contains an Indemnification clause.

23. Article 9.1 provided as follows:

> To the fullest extent permitted by law, the Subcontractor shalt indemnify and save harmless the Contractor, the Owner, the Architect/Engineer and any other person or entity required by the Contract Documents and their representatives, consultants, officers, members, shareholders, agents, servants, employees, and each of them (hereinafter individually and collectively, the "Indemnitees") from and against any and all claims made or asserted for any damage or injury of any kind or nature whatsoever (including death), to any person or property (Including, without limitation, claims for injury to or death of any employee of the Subcontractor, or the Subcontractor's subcontractors or suppliers of any lien, which claims result from, arise out of, or occur in connection with the execution of the Subcontractor's Work, but only to the extent caused by the negligent Acts or omissions of the Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, whether or not such claims were based upon Actual or alleged Active or passive negligence or wrongdoing of any indemnitee. Subcontractor shall indemnify Indemnitees from and against all loss, cost, expense, liability, damage or injury, including attorneys' fees and costs, that Indemnitees may directly or indirectly sustain, suffer or incur as a result thereof, and will pay on behalf of indemnitees, upon their demand, the amount of any judgment that may be entered against indemnitees or any of them in any such Action. In the event that such claims, loss, costs, expense, liability, damage or injury arise or are made, asserted or threatened against an indemnitee for which the insurer of Subcontractor does not admit coverage, or if the Contractor deems such coverage to be inadequate, the Contractor shall have the right to withhold from any payments due or lo become due to the Subcontractor an amount sufficient to protect Indemnitees from such

claims, loss, cost, expense, liability, damage or injury, including attorneys' fees and costs.

See **Exhibit 1**, ¶ 9.1.

24. Additionally, under the terms of the Subcontract, BCI was required to carry and maintain, at its own expense, an insurance policy naming ACC as an additional insured on a primary and non-contributory basis.

25. Article 10.4 of the Subcontract required BCI to provide a written endorsement on its general liability policy naming the Contractor (ACC) and other required entities as an Additional Insured ("Additional Insureds").

26. Article 10.4 further required that the Subcontractor's Insurance shall be primary to any insurance available to the Additional Insureds, and that any insurance available to the Additional Insureds (like the Travelers Policy) shall be secondary and non-contributory.

27. Article 10.4 provides as follows:

> Evidence of Insurance and Additional Insureds. Certificates of insurance in accordance with the sample certificate attached to this Agreement shall be filed with the Contractor prior to commencement of the Work. In addition to certificates of insurance, Subcontractor shall supple a written endorsement of Subcontractor's general liability (both primary and excess) and automobile insurance policy that names the Contractor and any other persons or entities required to be named as additional insureds in the Contract Documents and/or as specified in the insurance information attached to this Agreement as additional insured ("Additional Insureds"). The form endorsements shall be specified in the insurance information attached to the Agreement and shall specifically name the Additional Insureds. Blanket additional insured endorsements or actual policies of insurance containing a blanket additional insured endorsements clause shall not be acceptable. The Subcontractor's Insurance shall be primary to any insurance available to the Additional Insureds. Any insurance available to the Additional Insureds shall be secondary and non-contributory. The endorsements referred to herein shall provide that the Subcontractor's general liability and automobile insurance policy shall be primary, and that any insurance available to the Additional Insureds shall be secondary and non-contributory.

See **Exhibit 1**, ¶ 10.4

28. Prior to July 3, 2023, ACC demolished the commercial building and stripped the paving.

29. BCI removed all but two catch basins and regraded the premises, removing the existing pavement and gravel.

30. As a result, all the existing catch basin inlets were raised above grade, preventing any stormwater from entering the system and making the system useless relating to the drainage from the premises.

31. During the construction and prior to July 3, 2023, BCI constructed an earthen dam and detention pond along the eastern side of the premises, the portion of the property abutting Cedar Hollow and immediately in front of the boundary line with Cedar Hollow.

32. The detention pond utilized a small 18-inch diameter standpipe to discharge water from the detention pond and was intended to serve the entire premises.

33. With the earthen dam in place and none of the existing catch basins at grade to accept storm water flow, all storm water flow was concentrated to one inlet located within the detention pond and the area behind the earthen dam, which replaced the function of the entire system of catch basin inlets.

34. The singular 18-inch inlet pipe within the detention pond did not have the capacity to handle the stormwater from the entire site during a severe rainstorm on July 3, 2023, causing the water to be captured in the detention pond and eventually causing the earthen dam to fail.

35. As result, the dam discharged tens of thousands of gallons of water and soil material from the premises onto Cedar Hollow within a few minutes, causing damage to Cedar Hollow's common areas and the property of individual unit owners.

36.     By way of Complaint dated August 15, 2024, Cedar Hollow initiated suit against Rocky Hill Gateway and Belfonti entitled, *Cedar Hollow Association, Inc. v. Rocky Hill Gateway, LLC, et al.,* Docket No. HHB-CV-24-6089325-S, in the Connecticut Superior Court for the Judicial District of New Britain ("the Cedar Hollow Lawsuit").

37.     On January 15, 2025, Rocky Hill and Belfonti filed an apportionment complaint against ACC and BCI in the Cedar Hollow Lawsuit, seeking a proportionate share of liability on Cedar Hollow's underlying claims.

38.     On February 25, 2025, Cedar Hollow filed an Amended Complaint in the Cedar Hollow Lawsuit, naming ACC and BCI as direct defendants and asserting negligence claims against both.

39.     Separately, on July 23, 2025, seven (7) individual unit owners of Cedar Hollow also sued Rocky Hill and Belfonti in a lawsuit entitled, *Sandra Baker, et al v. Rocky Hill Gateway, LLC, et al.,* Docket No. HHB-CV-25-6097931-S, in the Connecticut Superior Court for the Judicial District of New Britain ("the Unit Owners' Lawsuit").

40.     On October 6, 2025, Rocky Hill and Belfonti filed an apportionment complaint against ACC and BCI in the Unit Owners' Lawsuit, seeking a proportionate share of liability on the Unit Owners' underlying claims.

41.     On August 25, 2025, the Connecticut Superior Court for the Judicial District of New Britain consolidated the Cedar Hollow Lawsuit and the Unit Owners' Lawsuit.

42.     The Claimants alleges damages in excess of $500,000.00.

43.     Travelers has been providing and continues to provide a defense to ACC in the Underlying Lawsuits.

**TENDERS TO BCI AND CNA**

44. ACC qualifies as an additional insured under the CNA policy and based on the terms of the Subcontract between ACC and BCI.

45. On January 16, 2025, Travelers tendered the defense of ACC in the Cedar Hollow Lawsuit to BCI, and demanded that BCI defend and indemnify ACC.

46. On February 16, 2025, CNA's claim professional emailed Travelers' claim professional, he acknowledged receipt of Travelers' tender, and he indicated that CNA would review the tender and provide a response.

47. Despite follow-up correspondence, and an indication from CNA on May 14, 2025, that it expected to accept Travelers' tender under reservation, to date, CNA has failed and refused to formally accept the defense and indemnification of ACC in connection with the Underlying Lawsuits.

**TRAVELERS' CAUSE OF ACTION FOR DECLARATORY RELIEF**

48. Travelers repeats and realleges the allegations contained in paragraphs 1-47 above as if set forth here in their entirety.

49. ACC qualifies as additional insured under the CNA Policy issued to BCI for the claims asserted against ACC in connection with the Underlying Lawsuits.

50. ACC is entitled to a defense under the CNA Policy issued to BCI, as well as to indemnification thereunder for any verdict or judgment rendered against ACC in the Underlying Lawsuits.

51. Coverage provided to ACC under the CNA Policy issued to BCI with respect to the Underlying Lawsuits is primary to that provided by the Travelers Policy.

52. Despite assurances otherwise, CNA has yet to accept Travelers' tender and has yet to provide additional insured coverage ACC as required by the Subcontract and CNA's Policy issued to BCI, with respect to the Underlying Lawsuits.

53. Accordingly, Travelers seeks a declaration that CNA has an obligation to defend and indemnify ACC as an additional insured; that the coverage provided by the CNA Policy to ACC is primary; and that the obligations of Travelers to ACC in the Underlying Lawsuits are excess to proper exhaustion and full payment of the limits of the CNA Policy.

54. In addition, Travelers seeks an award at law and in equity against CNA for recovery of all sums Travelers has incurred and continues to incur in defense of ACC in the Underlying Lawsuits because the coverages provided by the CNA Policy are primary to any coverage provided by Travelers.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, Travelers prays that judgment be entered as follows:

1. Declaring that the CNA Policy was in full force and effect on the date of the alleged accident.

2. Declaring that all terms and conditions of the CNA Policy has been complied with and met.

3. Declaring that the alleged July 3, 2023 occurrence and Underlying Lawsuits fall within the coverage afforded by the CNA Policy.

4. Declaring that the Defendant CNA owes a duty to defend ACC in connection with the Underlying Lawsuits.

5. Declaring that the Defendant CNA owes a duty to indemnify ACC in connection with the Underlying Lawsuits.

6. Declaring that the Defendant CNA's coverage obligations to ACC in connection with the Underlying Lawsuits are primary and non-contributory.

7. Declaring that Plaintiff Travelers' coverage obligations under the Travelers' Policy are excess to those of the Defendant CNA with respect to the Underlying Lawsuits.

8. Declaring that an actual controversy exists between the Plaintiff, Travelers and the Defendant, CNA with respect to CNA's duty to defend and indemnify ACC in connection with the Underlying Lawsuits.

9. Granting an award in favor of the Plaintiff Travelers against the Defendant, CNA for all sums that Travelers has paid and is continuing to pay in defending ACC as to the Underlying Lawsuits.

10. Granting an award in favor of the Plaintiff Travelers for the costs of suit incurred herein, including reasonable attorney's fees.

11. Granting such other and further relief as the Court may deem just and proper.

Dated: Hartford, Connecticut
December 17, 2025

RESPECTFULLY SUBMITTED:

THE PLAINTIFF,
The Phoenix Insurance Company

By: __/s/Logan A. Carducci_____
Logan A. Carducci, Juris. No.439975
Lcarducc@travelers.com
Shahan J. Kapitanyan, *pro hac vice pending*
skapitan@travelers.com
USERY & ASSOCIATES
Attorney for Plaintiff
Main:917-778-6680
Fax: 844-571-3789

<u>Please address all correspondence sent by mail to:</u>
P.O. Box 2996
Hartford, CT 06104-2996